IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TREMAINE L. KITCHEN, #255-710     *
        Plaintiff
        v.     *    CIVIL ACTION NO. DKC-09-3046

BOBBY SHEARIN, et al.,     *
        Defendants
                                ***

**MEMORANDUM OPINION**

Pending are Defendants Bobby Shearin, Philip J. Morgan, C. McKenzie, D. Faulkner, and R. Beal's Motion to Dismiss or for Summary Judgment (ECF No. 27), and Plaintiff's Motion for Summary Judgment. ECF No. 13. Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2010).

**Background**

Plaintiff alleges that on March 31, 2008, Defendant Bobby Shearin, the former Warden of the Western Correctional Institution ("WCI"), placed Plaintiff on sixty days of cell restriction after Plaintiff had completed his disciplinary segregation sentence. Plaintiff claims that his placement on cell restriction in addition to the disciplinary segregation sentence twice punished him for the same event and deprived him of due process. ECF Nos. 5 and 13.

Plaintiff further alleges that on December 23, 2008, Shearin sent Officer McKenzie to harass him due to his having filed several administrative remedy requests ("ARP") and letters complaining about McKenzie's "failure to do his job." Plaintiff maintains that it was a conflict of interest for Shearin to assign McKenzie to investigate ARPs filed about McKenzie's own actions. *Id.* Plaintiff alleges that during a conversation with McKenzie related to the ARPs and McKenzie's lack of objectivity, McKenzie became angry and yelled at Plaintiff, calling him a "nigger and a

motherfucker." Plaintiff states that although he left McKenzie's office without incident, on February 18, 2009, Shearin alleged that Plaintiff had been disrespectful to McKenzie during this exchange and had to be escorted from McKenzie's office. ECF No. 5.

Plaintiff states that on February 27, 2009, McKenzie gave Corporal Rice a homemade weapon to plant on Plaintiff and/or place inside Plaintiff's cell. On that day, Plaintiff's cell was searched by Defendants Faulkner, Rice and Beal. Faulkner allegedly found the ARP Plaintiff filed against Beal and Rice, and gave it to Beal to read. Faulkner and Beal both expressed their displeasure with Plaintiff for having filed the ARP. Faulkner reached into his pocket and retrieved a homemade knife attached to a string and planted it in Plaintiff's cell. Faulkner then wrote false disciplinary reports against Plaintiff which resulted in his serving 400 days of disciplinary segregation and loss of good conduct credits and visitations. *Id.*

Plaintiff further claims that on July 8, 2009, Defendant Philip Morgan sent McKenzie to "bully, brow-beat, [and] mistreat" Plaintiff with the intent to deter Plaintiff from filing letters and ARPs concerning racism and discrimination at WCI. Plaintiff states that he was taken to a room that had no cameras where McKenzie expressed his displeasure regarding the letters Plaintiff had sent to a variety of state officials and verbally berated Plaintiff, using racial epithets. *Id.* Plaintiff states that he filed ARPs and letters concerning McKenzie, Beal and Faulkner's use of racist remarks, bias, prejudice, and vulgarity, and neither Shearin nor Morgan took any action. *Id.*

The record demonstrates that on March 5, 2008, Plaintiff was served a notice of disciplinary infraction for assaulting a staff member. ECF No. 27, Ex. A. A hearing on the matter was held on March 10, 2008. Testimony was taken from an inmate, staff, and Plaintiff. The hearing officer found Plaintiff guilty of the rule infraction and sentenced him to 250 days of segregation, loss of

visits for one year, and loss of 120 good conduct credits. Plaintiff appealed the decision, which was affirmed by Warden Shearin. The Reduction in Violence Committee ("RIV") also imposed sixty days of cell restriction.[1] *Id.*

On December 9, 2008, Plaintiff filed an ARP complaining that Lieutenant McKenzie failed to discuss with him specifics of the additional 60-day cell restriction imposed by the RIV. Captain Murphy was assigned to investigate Plaintiff's ARP. Plaintiff refused to speak with Murphy. Murphy then interviewed McKenzie, who advised that when he attempted to speak with Plaintiff regarding the cell restriction Plaintiff became disrespectful and had to be escorted from McKenzie's office. Warden Shearin dismissed Plaintiff's complaint. Plaintiff's appeal of this decision was dismissed by the Commissioner of the Division of Correction who found Plaintiff's appeal to be malicious. *Id.*, Ex. A.

On the same date, Plaintiff submitted an ARP complaining that Lieutenant McKenzie and another officer were not performing their job duties. He withrew this ARP on January 21, 2009. *Id.*

McKenzie denies taking Plaintiff to a room without a camera and verbally abusing him. He also denies being sent by Warden Morgan to bully Plaintiff. *Id.*, Ex. B.

On February 27, 2009, Plaintiff's cell was searched by Faulkner and Beal. Plaintiff identified the bottom bunk as his and his cellmate claimed the top bunk. During the search Faulkner and Beal discovered a piece of metal, approximately 5 ¼ inches long and ¼ inch wide, which had been sharpened to a point, hidden under the bottom bunk mattress. A piece of rope approximately 6 ½ feet was also discovered. When the officers asked Plaintiff about the knife he replied, "I don't

---

[1]The RIV developed by the Division of Correction to reduce incidents of inmate violence, permits imposition of additional sanctions to those already imposed through the adjustment process. One such sanction allows the RIV to order restrictions on housing. ECF No. 27.

need no weapon to fuck you up." *Id.* Plaintiff was served a notice of inmate rule infraction and placed on administrative segregation pending a hearing. He was charged with violating inmate rules concerning use of threatening language, possession of a weapon, and possession of an article that reasonably could be used to aid or assist an escape. Plaintiff provided a statement that the weapon did not belong to his cellmate. The hearing, initially scheduled for March 6, 2009, was postponed as not all of Plaintiff's requested witnesses were available. The hearing was ultimately held on March 13, 2009. Plaintiff argued that the officers had falsely accused him of possessing the knife in retaliation for his having filed complaints against them. After reviewing the violation report, Plaintiff's statement, and testimony from Plaintiff's cellmate and Officers Faulkner and Rice, the hearing officer, noting Plaintiff's demeanor, found the officers' testimony and written statements credible and found Plaintiff guilty of violating rules concerning use of threatening language and possession of a weapon. Plaintiff was found not guilty of possessing an article to assist in an escape. He was sentenced to 400 days of segregation and indefinite loss of visits. He also had 1500 good conduct credits revoked. Plaintiff appealed this decision to the Warden. Warden Morgan affirmed the hearing officer's decision and the RIV Committee imposed an additional sixty days of cell restriction. *Id*.

Plaintiff appealed to the Inmate Grievance Office ("IGO"). *Id.,* Ex. C. The Administrative Law Judge upheld the decision of the hearing officer, finding no persuasive evidence to support Plaintiff's arguments and sufficient evidence of his guilt. *Id*. The ALJ reviewed the ARPs Plaintiff had filed against the officers, which Plaintiff claimed served as the basis of the allegedly retaliatory conduct, and found they did not contain allegations which would so damage an officer's reputation

such that the officer would plant a weapon in retaliation. The ALJ dismissed Plaintiff's complaint as without merit. *Id.*

During Plaintiff's stay on disciplinary segregation he was permitted access to the telephone for legal matters and verified emergencies. He was permitted access to legal materials. He was not permitted to attend congregate religious services but was permitted access to a Chaplain. *Id.*, Ex. A.

**Standard of Review**

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 1969. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

5

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

**Verbal Abuse/Racial Discrimination**

"[N]ot all undesirable behavior by state actors is unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995). Verbal abuse of inmates by guards, including aggravating language, without more, states no constitutional claim. *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff laughed at inmate and threatened to hang him); *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (racial slurs); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980) (no harm alleged from claimed verbal harassment and abuse by police officer). Accordingly, Plaintiff's allegations that Defendants

6

McKenzie, Beal, and Faulkner repeatedly used racist language toward him fails to state a claim. Likewise, Plaintiff's allegation that Wardens Shearin and Morgan failed to take corrective action as to the officers' unprofessional conduct fails to state a constitutional claim.

To the extent Plaintiff claims Defendants' actions rose to the level of racial discrimination, it is clear that inmates have a constitutional right to be free from discrimination on the basis of race. *See Lee v. Washington*, 390 U.S. 333 (1968). However, "absent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated." *Chapman v. Reynolds*, 378 F. Supp. 1137, 1140 (W.D. Va. 1974); *see also Williams*, 926 F.2d at 998 (conclusory allegation of racial discrimination in confiscation of excess property insufficient to state claim because no allegation that prisoners of another race were allowed to retain more property); *Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir. 1980) (conclusory allegations of racial discrimination insufficient to state claim). A prisoner must show more than disparate impact. *See Washington v. Davis*, 426 U.S. 229, 240 (1976). A mere conclusory averment, as provided by Plaintiff in the instant case, is insufficient to withstand a dispositive motion. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F. 2d 1083, 1085 (4th Cir. 1979).

**Due Process in Disciplinary Hearings**

In prison disciplinary proceedings which bring the possible loss of good conduct credits, a prisoner entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Wolff*, 418 U. S. at 564-571. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). Plaintiff received all the process he

was due.  He was given timely advance written notice of both infractions and was permitted to attend both disciplinary hearings and to call witnesses on his own behalf.  He received a postponement of his disciplinary hearing in order that his witnesses could attend.  He also received written findings of the hearing officer.  Moreover, the hearing officer's determination of guilty findings, in both instances, was based upon some evidence, i.e. review of Plaintiff's testimony, other inmate testimony, staff testimony, physical evidence,  and the written record, upon which the hearing officer based determinations as to credibility and demeanor.

To the extent Plaintiff maintains that the additional sixty days of cell restriction imposed by the RIV violated his right to due process, his claim fails.  Principally, there is no additional procedural due process requirement on sentences imposed after a guilty finding or a review and alteration of a sentence imposed after a guilty finding.  *See Wolf,* 418 U.S. at 563.  Simply stated, Plaintiff was not entitled to additional procedural protections in order for the RIV to review the adjustment proceedings.  The RIV did not revoke additonal good conduct credits and thus did not lengthen the amount of time Plaintiff must serve.  Rather, the RIV simply imposed cell restriction upon Plaintiff, an assignment which does not impose an atypical or significant hardship in relation to the ordinary incidents of prison life.

In general, prisoners  do not have a constitutional right to demand to be housed in one prison verses another.  "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  Under the Supreme Court's pronouncement in *Sandin v. Conner*, 515 U.S. 472 (1995), the focus on mandatory language in prison regulations was rejected. A liberty interest may be created when state action imposes an "atypical and significant hardship on

the inmate in relation to the ordinary incidents of prison life" without regard to mandatory language in prison regulations. *Id.* at 484. Thus, the due process inquiry must focus on the nature of the deprivation alleged and not on the language of particular prison regulations. *Id*. Following the reasoning of the Supreme Court in *Sandin*, the Fourth Circuit held that a liberty interest is not implicated when inmates are placed on administrative segregation, because upon comparison with those conditions they would expect to experience as an ordinary incident of prison life, it does not constitute an atypical and significant hardship. *See Beverati v. Smith*, 120 F.3d 500, 502-04 (4th Cir. 1997); *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996). In *Beverati*, the Fourth Circuit, in affirming the decision of this court, held that Beverati's placement in administrative segregation did not comparatively constitute the type of hardship necessary to give rise to a liberty interest in avoiding such placement. *See Beverati*, 120 F.3d at 503. This court finds that there is nothing in the record or pleadings which shows that the nature of Plaintiff's assignment to cell restriction comprised the atypical hardship contemplated by *Sandin* or *Beverati*. Thus, such restriction does not implicate a liberty interest.

**Retaliation**

Plaintiff claims that Defendants "planted" the weapon in his cell and thereby subjected him to false disciplinary proceedings in retaliation for his having filed complaints against them. In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v.*

9

*King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim). Plaintiff offers nothing in support of his claim other than self-serving conclusory averments. There is nothing in the record to suggest that Defendants acted in the manner alleged. Moreover, the ALJ found that the complaints filed by Plaintiff against the officers were not of the nature that would incite an officer to retaliate. "In the prison context, we treat [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3de 1310, 1317 (4th Cir. 1996).

**Conclusion**

In light of the above analysis, Defendants' Motion to Dismiss or for Summary Judgment shall be granted as to all claims. Plaintiff's Motion for Summary Judgment shall be denied. A separate Order follows.

Date: __March 1, 2011__  /s/
DEBORAH K. CHASANOW
United States District Judge